**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2734-16T7

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

MELVIN T. DICKERSON,

    Defendant-Respondent.

_____

Argued May 23, 2017 — Decided July 3, 2017

Before Judges Fasciale and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Complaint No. W-2017-170-1303.

Ian D. Brater, Assistant Prosecutor, argued the cause for appellant (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Mr. Brater, of counsel and on the brief).

Cody T. Mason, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Mr. Mason, of counsel and on the brief).

PER CURIAM

The State, on leave granted, appeals from a February 7, 2017 order denying its application to detain defendant pretrial because the State failed to produce certain discovery. The State also appeals from a February 8, 2017 order denying its motion for reconsideration. We affirm the part of the orders that compelled discovery, but reverse the denial of the application for pretrial detention and remand for a hearing.

I.

On January 31, 2017, an Asbury Park police officer applied for a warrant to search premises used by a barbershop and hair salon business (the Barbershop). That same day, a Superior Court judge reviewed the application and issued a search warrant. The following day, law enforcement officers executed the search warrant.

When the police officers entered the Barbershop, there were four individuals present, including defendant Melvin T. Dickerson and co-defendant Julius D. Franklin. A search of the premises revealed more than one-half ounce of suspected marijuana, a 9mm sub-machine gun, a .38 caliber semi-automatic handgun, a stun gun, various types of ammunition, two digital scales, a heat-seal vacuum, a box of "Ziploc" vacuum sealer gallon bags, a RadioShack Pro-94 radio suspected to be a police scanner, a cell phone, and several documents and correspondence bearing defendant's name.

Defendant was arrested and charged with ten crimes: two counts of second-degree possession of a firearm while in the course of committing a narcotics offense, N.J.S.A. 2C:39-4.1(a); second-degree unlawful possession of a machine gun, N.J.S.A. 2C:39-5(a); third-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); third-degree possession of a defaced handgun, N.J.S.A. 2C:39-3(d); fourth-degree unlawful possession of a stun gun, N.J.S.A. 2C:39-3(h); fourth-degree unlawful interception and use of police emergency communications, N.J.S.A. 2C:33-21; fourth-degree possession of over one-half ounce of marijuana, N.J.S.A. 2C:35-10(a)(3); third-degree possession of marijuana with the intent to distribute, N.J.S.A. 2C:35-5(b)(11); and third-degree possession of marijuana with intent to distribute in a school zone, N.J.S.A. 2C:35-7(a).

Co-defendant Franklin was also arrested and charged with drug-related and weapons-related offenses. The two other individuals who were present at the Barbershop when the search warrant was executed were not charged with any crimes and were released.

The State moved to detain defendant pretrial under the Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26. Before the hearing, the State provided defense counsel with copies of the complaints, the affidavit of probable cause, the preliminary

law enforcement incident report (PLEIR), defendant's criminal history, the Public Safety Assessment (PSA), an incident report prepared by one of the officers who executed the search warrant, the arrest report, and the search warrant.

The PSA assessed defendant's risk of failure to appear as three on a scale of one to six, with one being a low risk and six being a high risk. The PSA also assessed defendant's risk of new criminal activity as three, again on a scale of one to six. The PSA, therefore, recommended that defendant be released pretrial on certain conditions, including monthly reporting.

The detention hearing was scheduled to be held on February 7, 2017. At the beginning of the hearing, defense counsel informed the trial court that the State had not produced the affidavit filed in support of the search warrant and supporting investigative reports (collectively, search warrant information). After confirming that defendant was seeking that information, the court denied the State's application for defendant's detention without conducting a hearing. Instead, the court ordered defendant released subject to seven conditions, including weekly reporting and a prohibition of possessing dangerous weapons.

The following day, on February 8, 2017, this court issued our decision in State v. Robinson, 448 N.J. Super. 501 (App. Div.), aff'd and modified, ____ N.J. ____ (2017). That same day, the

State moved for reconsideration of the order denying its application to detain defendant pretrial.  The trial court heard and denied the motion for reconsideration on February 8, 2017.  The court explained the reasons for its denial on the record and issued an order stating that the State was required to produce the search warrant information before the pretrial detention hearing and, because it failed to do so, the State's application was denied and dismissed "without the holding of a detention hearing."

We granted the State's motion for leave to appeal.

## II.

On appeal, the State argues:

> THE ORDER DENYING THE STATE'S MOTION FOR PRETRIAL DETENTION SHOULD BE REVERSED BECAUSE IT IS PREDICATED ON THE [TRIAL] COURT'S ERRONEOUS LEGAL CONCLUSION THAT RULE 3:4-2(c)(1)(B) AND ROBINSON REQUIRED THE STATE TO TURN OVER THE SEARCH WARRANT AFFIDAVIT IN ANTICIPATION OF THE PRETRIAL DETENTION HEARING

In its brief on appeal, the State makes two related arguments regarding the scope of pretrial detention discovery.  First, it contends that the search warrant information does not fall within the ambit of discovery called for under Rule 3:4-2(c)(1)(B).  Second, the State argues that Rule 3:5-6(c) makes the search warrant information confidential and subject to disclosure only after an indictment is issued or the State makes a pre-indictment plea offer.  The State also argues that, as a sanction for not

5

producing the discovery, the trial court erred in not holding a hearing on the State's detention application. We address each of these arguments in turn.

A.  Pretrial Detention Discovery

The discovery that the State must produce when it seeks to detain a defendant before trial under the CJRA is governed by Rule 3:4-2(c)(1)(B). In February 2017, when the State sought to detain defendant, the rule provided:

> [I]f the prosecutor is seeking pretrial detention, the prosecutor shall provide the defendant with all statements or reports in its possession relating to the pretrial detention application. All exculpatory evidence must be disclosed.
>
> [R. 3:4-2(c)(1)(B).]

Effective May 10, 2017, our Supreme Court modified and issued a new version of Rule 3:4-2(c), which provides:

> (c) Procedure in Indictable Offenses. At the defendant's first appearance before a judge, if the defendant is charged with an indictable offense, the judge shall
>
>> (1) give the defendant a copy of the complaint, discovery as provided in subsections (A) and (B) below, and inform the defendant of the charge;
>>
>>> (A) if the prosecutor is not seeking pretrial detention, the prosecutor shall provide the defendant with a copy of any available preliminary law enforcement incident report

concerning the offense and the affidavit of probable cause;

(B) if the prosecutor is seeking pretrial detention, the prosecutor shall provide the defendant with (i) the discovery listed in subsection (A) above, (ii) all statements or reports relating to the affidavit of probable cause, (iii) all statements or reports relating to additional evidence the State relies on to establish probable cause at the hearing, (iv) all statements or reports relating to the factors listed in N.J.S.A. 2A:162-18(a)(1) that the State advances at the hearing, and (v) all exculpatory evidence.

[State v. Robinson, supra, slip op. at 33.]

In Robinson, the Supreme Court addressed the scope of discovery to be provided by the State when it seeks the pretrial detention of a defendant. Id. at 29-32. Initially, the Court gave an overview of the CJRA and explained the purpose of pretrial detention discovery. Id. at 3-10. The Court explained that at a pretrial detention hearing, the State is required to present "both some proof about the crime - - sufficient to establish probable cause - - and proof relating to the risk of flight, danger, or obstruction." Id. at 27. The Court then identified the interests that were involved in the detention hearing and explained, "the scope of the discovery rule in detention cases must reflect what

7

is at stake." Ibid. Accordingly, the Court identified the State's interest in public safety and the defendant's interest in his or her liberty. Ibid. The Court also reasoned that a "discovery rule should set forth a workable standard" that accounts for the "tight timeframe" involved in a detention hearing. Id. at 27-28.

To balance those interests and aims, the Court identified twelve principles that "should govern the disclosure of evidence at a detention hearing[.]" Id. at 29. Those principles are:

> 1. . . . [B]ecause the [CJRA] calls for a determination of probable cause and an assessment of the risk of danger, flight, and obstruction, which may include consideration of the nature and circumstances of the offense and the weight of the evidence, discovery should likewise be keyed to both areas. See N.J.S.A. 2A:162-18(a)(1); -19(e)(2); -20(a), (b).
>
> 2. The complaint must be disclosed.
>
> 3. The Public Safety Assessment must be disclosed.
>
> 4. The affidavit of probable cause must be disclosed. . . .
>
> 5. Any available PLEIR should be disclosed.
>
> 6. All statements and reports relating to the affidavit of probable cause should be disclosed. . . .
>
> 7. All statements or reports that relate to any additional evidence the State relies on to establish probable cause at the detention hearing should be disclosed. . . .

8. Statements and reports related to items that appear only in the PLEIR need not be disclosed. . . .

9. Statements and reports relating to the risk of flight, danger, and obstruction, N.J.S.A. 2A:162-18(a)(1), which the State advances at the hearing, should be disclosed. . . .

10. The phrase "statements and reports" refers to items that exist at the time of the hearing. The terms plainly include relevant police reports. . . .

11. . . . [S]tatements and reports encompass reports that are in the possession of the prosecutor, law enforcement officials, and other agents of the State. . . .

12. All exculpatory evidence must be disclosed.

[Id. at 29-32.]

In Robinson, the Court held that the State had to produce an initial police report about the witnesses to an alleged murder, including copies of the statements or reports of eyewitnesses. Id. at 41. The Court also held that when the eyewitnesses made an identification, the State was required to produce the information concerning the identification process, along with copies of any photographs used in the identification process. Ibid. Finally, the Court held that the State need not disclose surveillance videos. Ibid.

"A trial court's resolution of a discovery issue is entitled to substantial deference and will not be overturned absent an abuse of discretion." State v. Stein, 225 N.J. 582, 593 (2016). Nevertheless, appellate review of the meaning of a court rule, such as Rule 3:4-2(c), is de novo. State v. Robinson, supra, slip op. at 25.

Applying the principles identified in Robinson and Rule 3:4-2(c)(1)(B), we hold that the State needed to produce the search warrant information, including the affidavit submitted in support of that search warrant and all existing supporting investigative reports leading to the search warrant application. This result is compelled by the language of Rule 3:4-2(c)(1)(B) and the sixth, seventh, and tenth principles identified by the Supreme Court in Robinson. Id. at 30-32.

In its original form, Rule 3:4-2(c)(1)(B) called for the production of "all statements or reports in [the State's] possession relating to the pretrial detention application." As revised by the Supreme Court in Robinson, the rule now calls for the production of "all statements or reports relating to the affidavit of probable cause . . . [and] all statements or reports relating to additional evidence the State relies on to establish probable cause at the hearing[.]" Id. at 33

Under either version of the rule, the State was obligated to produce the search warrant information. Here, defendant was charged with weapons-related and drug-related offenses based on items seized pursuant to a search warrant. Thus, the charges depended not only on the items seized, but the validity of the seizure of the items. Moreover, the affidavit of probable cause stated "PURSUANT TO THE EXECUTION OF A SEARCH WARRANT ON 02/01/2017 THE ACCUSED WAS ARRESTED AFTER BEING FOUND TO BE IN POSSESSION OF SUSPECTED CDS, WEAPONS, AND CONTRABAND." Accordingly, the search warrant information should have been considered statements or reports relating to the pretrial detention application and relating to the affidavit of probable cause.

The State argues that the search warrant information was not called for under Rule 3:4-2(c) because the State was relying only on the items seized. The items, however, were seized under a search warrant and, if the search warrant were invalid, that would affect the probable cause of the charges against defendant. See State v. Dispoto, 189 N.J. 108, 123 (2007) (holding that the evidence obtained through an invalid search warrant constitutes fruits of the poisonous tree and must be suppressed). We are not suggesting that a pretrial detention hearing should morph into a suppression hearing. Instead, we hold that when the State's evidence is largely dependent on items seized under a search

11                                                          A-2734-16T7

warrant, the affidavits submitted in support of the application for the search warrant and related police reports are relevant evidence relating to the issue of probable cause in a pretrial detention hearing.

B.   Rule 3:5-6(c)

The State also argues that under Rule 3:5-6(c), the search warrant information is confidential and is subject to disclosure to defendant only at a later phase of the criminal process.  Rule 3:5-6(c) provides:

> All warrants that have been completely executed and the papers accompanying them, including the affidavits, transcript or summary of any oral testimony, duplicate original search warrant, return and inventory, and any original tape or stenographic recording shall be confidential except that the warrant and accompanying papers shall be provided to the defendant in discovery pursuant to [R.] 3:13-3 and available for inspection and copying by any person claiming to be aggrieved by an unlawful search and seizure upon notice to the county prosecutor for good cause shown.

The State focuses on the reference to Rule 3:13-3 and contends that because Rule 3:5-6(c) does not refer to Rule 3:4-2(c)(1)(B), the State need only disclose a search warrant and the related materials to defendant after an indictment is filed or unsealed

or if the State makes a pre-indictment plea offer.  We reject this interpretation of Rule 3:5-6(c).

Rule 3:5-6(c) provides that a search warrant and related materials are confidential, subject to two exceptions.  The first exception is that a criminal defendant has access to a warrant and the accompanying papers as provided in Rule 3:13-3, which governs criminal discovery.  Second, any person claiming to be aggrieved by an unlawful search and seizure is entitled to inspect and copy the papers accompanying a warrant on good cause shown.  Ibid. Here, because defendant is seeking the information, we apply the first exception.

Rule 3:5-6(c), like Rule 3:13-3, must now be read in harmony with Rule 3:4-2(c).  Accordingly, if any documents or information are subject to disclosure under Rule 3:4-2(c), that rule controls the timing of disclosure.

To the extent that the State has confidentiality concerns, such concerns can be addressed by applying for a protective order. Indeed, the Supreme Court addressed this confidentiality issue in State v. Robinson, supra, slip op. at 34.  In that regard, the Supreme Court explained:

> In appropriate cases, the prosecutor "may
> apply for a protective order to redact, delay,
> or withhold the disclosure of materials that
> would expose witnesses and others to harm,
> hinder or jeopardize ongoing investigations or

prosecutions, undermine the secrecy of informants and confidential information which the law recognizes, or compromise some other legitimate interest." State in Interest of N.H., 226, N.J. 242, 256 (2016) (citing R. 3:13-3(a)(1), (e)(1)). The prosecutor may bring an application directly to the judge who will preside over the detention hearing.

[Id. at 34.]

Here, the State did not seek a protective order. Moreover, the State made no argument that the search warrant information contains confidential information or that the disclosure of the information would expose witnesses or others to harm. Furthermore, the State itself produced the search warrant. While we reject defendant's argument that the production of the search warrant acted as a waiver of the confidentiality of the search warrant information, the production of the search warrant without a companion application for a protective order demonstrates that, in this case, there were no confidentiality concerns.

In summary, we hold that Rule 3:4-2(c)(1)(B) required the State to produce to defendant the search warrant information before the detention hearing. Accordingly, we affirm the trial court's order compelling that production.

C. The Appropriate Sanction

Lastly, we address the appropriate sanction for a failure to produce pretrial detention discovery.

The State is obligated to produce discovery under <u>Rule</u> 3:4-2(c), and that obligation is not optional. Moreover, the State must comply with its discovery obligations in good faith. <u>State v. Robinson</u>, <u>supra</u>, slip op. at 35 (explaining that the State must apply <u>Rule</u> 3:4-2(c) in "good faith").

If the State fails to act in good faith or if the State refuses to comply with a directive or order of the court, then it is subject to appropriate sanctions for failure to produce discovery. <u>Rule</u> 3:13-3(f) authorizes a trial court to take appropriate action when there has been a failure of compliance by the State with its duty to disclose relevant information. The rule provides,

> [i]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, it may order such party to permit the discovery of materials not previously disclosed, grant a continuance or delay during trial, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems appropriate.
>
> [<u>R.</u> 3:13-3(f).]

"The choice of sanctions appropriate for discovery-rule violations is left to the broad discretion of the trial court." <u>State v. Marshall</u>, 123 <u>N.J.</u> 1, 134 (1991), <u>cert. denied</u>, 507 <u>U.S.</u> 929, 113 <u>S. Ct.</u> 1306, 122 <u>L. Ed.</u> 2d 694 (1993). The trial court,

however, needs to make specific findings and explain the reasons for imposing a sanction. State v. Clark, 347 N.J. Super. 497, 508-09 (App. Div. 2002) (quoting State v. Laganella, 144 N.J. Super. 268, 282-83 (App. Div.), certif. denied, 74 N.J. 256 (1976)). "An adjournment or continuance is a preferred remedy where circumstances permit." Id. at 509. Moreover, because pretrial detention applications implicate public safety issues and a defendant's civil liberties, the trial court's response to a discovery issue should seek to accommodate both interests. See N.J.S.A. 2A:162-15.

Accordingly, if the State has a good faith position for not producing certain discovery, there should be a disclosure to defendant, defense counsel, and the court. The court should then make a ruling and, if appropriate, direct the production of the relevant discovery. If at that point, the State refuses to provide the discovery, the court can fashion an appropriate sanction and should explain the reasons for the sanctions imposed. Moreover, to the extent that there are legitimate discovery disputes, they need to be addressed within the tight timeframes involved in a pretrial detention application. See N.J.S.A. 2A:162-19(d)(1) (allowing the detention hearing to be continued for up to three days upon the prosecutor's request or up to five days at the defendant's request). Consequently, candor and good faith by the

State is necessary and an intentional failure to comply with discovery obligations is an appropriate consideration when determining the sanction.

Here, the trial court never addressed the appropriate sanction and never explained the reasons for imposing a sanction. Instead, when the trial court was informed that the State had not produced the search warrant information, the court, without holding a hearing, ordered defendant to be released on certain conditions. Thus, the court never gave the State the opportunity to produce the search warrant information. In the transcripts of the proceedings held on February 7 and 8, 2017, there are hints that the trial court had previously addressed the scope of discovery the State needed to produce before a pretrial detention hearing. The record, however, is insufficient to allow us to evaluate whether the State was acting in good faith and whether the court considered a sanction less than a denial of the State's application for pretrial detention. Consequently, we vacate the portions of the orders that denied the State's application for defendant's pretrial detention for failure to produce discovery and we remand for a detention hearing.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-2734-16T7